UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

DARRELL MOORING,

Plaintiff,

v.

CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION, et al.,

Defendants.

No. 2:14-cv-01471-MCE-KJN

**ORDER**

Through this action, Plaintiff Darrell Mooring ("Plaintiff") seeks to recover monetary damages from Defendants California Department of Corrections and Rehabilitation and the State of California (collectively "CDCR") and Warden Brian Duffy for violations of Title II of the Americans with Disabilities Act ("ADA"), § 504 of the Rehabilitation Act of 1973 ("Rehabilitation Act"), and 42 U.S.C. § 1983. Presently before the Court is Defendants' Motion for Summary Judgment ("Motion"). For the following reasons, Defendants' Motion is DENIED as to Plaintiff's First and Second Causes of Action under the ADA and the Rehabilitation Act and GRANTED as to Plaintiff's Third Cause of Action under § 1983.[1]

[1] Because oral argument would not be of material assistance, the Court ordered this matter submitted on the briefs. E.D. Cal. Local R. 230(g).

## BACKGROUND[2]

Plaintiff, an amputee who was also a CDCR inmate at the California Medical Facility ("CMF") from June 2012 to January 2014, relies on either a prosthetic leg or a wheelchair to ambulate and was medically prescribed a wheelchair for use outside his cell. On May 1, 2012, Plaintiff's doctor verified that he required an "ADA accommodation for bathing," and this information was placed in Plaintiff's CMF Central File. When Plaintiff arrived at CMF the following month, a screening nurse assessed his medical needs, and he was placed in the J-3 Housing Unit ("J-3 Unit").

The J-3 Unit's showers lacked grab bars. On one occasion, Plaintiff slipped and nearly fell while showering. Shortly thereafter, Plaintiff informed his doctor that the showers were not equipped for someone with his disability. His doctor, in turn, notified the sergeant in charge of the J-3 Unit of Plaintiff's concern. Plaintiff was then moved to the J-2 Housing Unit ("J-2 Unit").

Unfortunately, the J-2 Unit's shower facility also lacked grab bars. Plaintiff immediately notified a correctional officer of that oversight, and that officer, in turn, called his supervisor. The supervisor advised that Plaintiff should "be patient and wait." In the meantime, in order to shower in the J-2 Unit, which did not contain wheelchair accessible shower stalls, Plaintiff was forced to leave his chair and to hop on one foot to shower. Moreover, once Plaintiff made it inside the shower, he either had to hold onto the showerhead for support or sit in a plastic folding chair that would be provided to him upon his request. When finished, Plaintiff was apparently expected to hop on one leg back to his wheelchair.

Not surprisingly, on August 21, 2012, while attempting to hop his way out of the shower, Plaintiff slipped and fell, injuring his back, buttocks and his amputated leg. Rather than risk another fall, Plaintiff thereafter chose to wash himself in the bathroom sink until he was transferred over a week later to a housing unit where the showers were

[2] The following background facts are undisputed. See generally ECF No. 24-2; ECF No. 27-1.

equipped with grab bars. Defendants subsequently had grab bars installed in the Unit J-2 showers.

Plaintiff then initiated this action seeking to recover for his injuries the ADA, the Rehabilitation Act, and § 1983. By way of their instant Motion, Defendants contend they are entitled to judgment on all causes of action as a matter of law.

**STANDARD**

The Federal Rules of Civil Procedure provide for summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). One of the principal purposes of Rule 56 is to dispose of factually unsupported claims or defenses. Celotex, 477 U.S. at 325.

In a summary judgment motion, the moving party always bears the initial responsibility of informing the court of the basis for the motion and identifying the portions in the record "which it believes demonstrate the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323. If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986); First Nat'l Bank v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968).

In attempting to establish the existence or non-existence of a genuine factual dispute, the party must support its assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits[,] or declarations . . . or other materials; or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). The opposing party must demonstrate that the fact in contention is material, i.e., a fact that

might affect the outcome of the suit under the governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 251-52 (1986); Owens v. Local No. 169, Assoc. of W. Pulp and Paper Workers, 971 F.2d 347, 355 (9th Cir. 1987). The opposing party must also demonstrate that the dispute about a material fact "is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. In other words, the judge needs to answer the preliminary question before the evidence is left to the jury of "not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed." Anderson, 477 U.S. at 251 (quoting Improvement Co. v. Munson, 81 U.S. 442, 448 (1871)) (emphasis in original). As the Supreme Court explained, "[w]hen the moving party has carried its burden under Rule [56(a)], its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586. Therefore, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Id. 87.

In resolving a summary judgment motion, the evidence of the opposing party is to be believed, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. Anderson, 477 U.S. at 255. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898 (9th Cir. 1987).

///

///

///

///

///

///

## ANALYSIS

### A. Plaintiff's First and Second Causes of Action under the Rehabilitation Act and Title II of the ADA

Plaintiff's First and Second Causes of Action allege that CDCR discriminated against him based on his disability by failing to provide him with accessible shower facilities. Because Plaintiff seeks to recover monetary damages pursuant to these claims, he must show that: (1) he is disabled; (2) he was denied the benefits of a public entity's service, program or activity, or otherwise discriminated against because of his disability; and (3) that the denial or discrimination was intentional. Duvall v. Cnty. of Kitsap, 260 F.3d 1124, 1135-38 (9th Cir. 2001).[3] CDCR argues that there is no genuine issue of triable fact regarding the intentional discrimination element of Plaintiff's claims. ECF No. 24-1 at 7. CDCR further argues that Plaintiff's disability was reasonably accommodated by provision of a plastic folding chair and that there is no evidence that Plaintiff was discriminated against or denied access to the showers because of his disability. ECF No. 24-1 at 10; ECF No. 27 at 4. Each of these arguments is rejected.

#### 1. Intentional Discrimination

A plaintiff can establish intentional discrimination by showing that the defendant was deliberately indifferent to the likelihood that a particular decision would result in a violation of the plaintiff's federally protected rights. Duvall, 260 F.3d at 1138. To make a showing of deliberate indifference, a plaintiff must demonstrate: (1) that the defendant had knowledge that harm to a federally protected right was substantially likely; and (2) that the defendant failed to act upon that likelihood. Id. at 1139. "When the plaintiff has alerted the public entity to his need for accommodation (or where the need for accommodation is obvious, or required by statute or regulation), the public entity is on notice that an accommodation is required, and the public has satisfied the knowledge

[3] A cause of action under the Rehabilitation Act essentially parallels an ADA cause of action. See Olmstead v. Zimring, 527 U.S. 581, 590-91 (1999); Duvall, 260 F.3d at 1135, 1138.

element of the deliberate indifference test." Id.

Here, Plaintiff easily satisfies the deliberate indifference test for purposes of opposing a motion for summary judgment. Plaintiff made multiple complaints to CMF correctional officers and doctors about his difficulty using the J-3 and J-2 Units' shower facilities. ECF No. 27-1 at Facts 24, 26. Furthermore, Plaintiff is an amputee. The fact that Plaintiff has only one leg, and therefore requires an accommodation in the shower, is obvious.

CDCR nonetheless argues that, because Plaintiff's Central File only mentioned the need for a "bathing accommodation," rather than specifically denoting that he needed grab bars, Plaintiff was required to submit several forms to request anything other than the shower chair he was provided. ECF No. 24-1 at 8:19-20. This is nonsensical. Not only is it ludicrous to require a person to hop on one foot in a wet shower because he purportedly did not submit the correct form, but nothing in the Rehabilitation Act or the ADA required Plaintiff to alert officials of his accommodation needs by filling out specific forms.[4] See Duvall, 260 F.3d at 1140-41 (holding that the plaintiff's oral notification of defendants of his need for accommodations was sufficient to create a triable issue of fact on the issue of deliberate indifference). Accordingly, there is at the very least a triable issue of fact as to CDCR's deliberate indifference toward Plaintiff.

**2. Reasonable Accommodation**

When a public entity becomes aware that an accommodation is required, it must conduct a fact-specific investigation that considers the particular individual's needs and offer a reasonable accommodation based on the results of that individualized investigation. Id. at 1139. "Accordingly, a public entity does not 'act' by proffering just any accommodation[,]" particularly when the accommodation is based on stereotyped

[4] CDCR further argues that it could not have been deliberately indifferent to Plaintiff's need for an accommodation because it installed grab bars shortly after Plaintiff was injured and filed an administrative grievance. See ECF No. 24-1 at 9. Because Plaintiff orally notified CDCR of his need for accommodation well before he was injured and forced to file an administrative grievance, CDCR's belated installation of grab bars does not entitle it to judgment as a matter of law.

assumptions about the person's disability. Id. at n. 14.

CDCR's assertion that the provision of a shower chair satisfied its legal obligation to reasonably accommodate Plaintiff's disability thus proves too much. Providing a one-size-fits-all accommodation does not substitute for an individualized investigation. Indeed, CDCR's failure to even mention such an investigation in their Motion makes summary judgment on this ground inappropriate.

Moreover, even if CDCR had arrived at the shower chair accommodation after conducting an investigation into Plaintiff's particular needs, however, its solution was inadequate. Plaintiff's injury was not caused by the fact that he was forced to stand up in the shower and hold onto the showerhead. Defendant was injured because he was forced to hop on one leg from the shower back to his wheelchair. ECF No. 27-1 at 3. Nothing in the record demonstrates that the provision of a plastic folding chair could have fully accommodated Plaintiff's disability by making it safe for Plaintiff to use the J-2 Unit's shower facility.

### 3. Discrimination "Because of" Disability

CDCR's final argument is that nothing in the record supports Plaintiff's claim that he was discriminated against "because of his disability." By this argument, CDCR thus attempts to characterize Plaintiff's claim as nothing more than "a slip and fall case." CDCR's characterization is fundamentally misguided.

Certainly, Defendants' only authority is inapposite. In Shaw v. TDCJ-CID, 540 F. Supp. 2d 834, 838 (S.D. Tex. 2008), a legally blind inmate alleged that prison officials violated the ADA and the Rehabilitation Act because they failed to install non-stick flooring in all showers and their failure to do so resulted in Shaw falling and breaking his hand. Id. at 835. In that case, there was no indication that the non-slip floors would have been an accommodation for the plaintiff's blindness. Accordingly, that plaintiff failed to identify how he was discriminated against based on his his disability, which rendered his action a garden-variety slip-and-fall case, not actionable under the ADA and the Rehabilitation Act.

This case is different. Plaintiff specifically alleges that CDCR's indifference to his need for shower accommodations forced him to bathe in the sink. ECF No. 17 at ¶ 35. Defendants do not dispute that Plaintiff washed himself in the sink rather than risking another fall, ECF No. 27-1 at 3, and there is no question that Plaintiff could have safely showered in the existing facilities if he had two legs. Accordingly, Plaintiff has established a genuine issue of triable fact regarding whether CDCR denied him the ability to shower because of his disability. Defendants' Motion is therefore DENIED as to Plaintiff's First and Second Causes of Action.

**B. Third Cause of Action under § 1983**

Plaintiffs' Third Cause of Action against Warden Duffy does not fare so well. Section 1983 permits a plaintiff to enforce rights contained in the United States Constitution and defined by federal law. Vinson v. Thomas, 288 F.3d 1145, 1155 (9th Cir. 2002). "An alleged violation of federal law may not be vindicated under § 1983, however, where . . . Congress has foreclosed citizen enforcement in the enactment itself . . . by imbuing it with its own comprehensive remedial scheme." Id. The Ninth Circuit has held that individuals cannot be sued under § 1983 for violations of Title II of the ADA or § 504 of the Rehabilitation Act because those statutes have a comprehensive remedial scheme. Id. at 1156.

Here, Plaintiff's § 1983 claim is effectively based on the above ADA and Rehabilitation Act violations. See ECF No. 17 at ¶¶ 44-49. Plaintiff is thus limited to the seeking relief under the comprehensive remedial scheme provided by those statutes rather than under a § 1983 claim. See Vinson, 288 F.3d at 1156. The Court therefore GRANTS Defendants' Motion as to Plaintiff's Third Cause of Action.

///

///

///

///

///

## CONCLUSION

For the reasons set forth above, it is HEREBY ORDERED that:

1. Defendants' Motion for Summary Judgment (ECF No. 24) is DENIED as to Plaintiff's First and Second Causes of Action;

2. Defendants' Motion is GRANTED as to Plaintiff's Third Cause of Action; and

3. Defendant Duffy is DISMISSED from this action.

IT IS SO ORDERED.

Dated: October 13, 2015

MORRISON C. ENGLAND, JR., CHIEF JUDGE
UNITED STATES DISTRICT COURT